**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2494-23

JEFFREY S. FELD, ESQ.,

     Plaintiff-Appellant,

v.

THE TOWNSHIP OF MILLBURN,
MAYOR TARA B. PRUPIS,
DEPUTY MAYOR RICHARD
WASSERMAN, COUNCILPERSON
DIANE THALL-EGLOW,
COUNCILPERSON MAGGEE
MIGGINS, COUNCILPERSON
SANJEEV VINAYAK, and
BUSINESS ADMINISTRATOR
ALEXANDER MCDONALD,
individually and in their
official capacities,

     Defendants-Respondents.

_____

Argued May 14, 2025 – Decided August 28, 2025

Before Judges Rose, DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5448-21.

Jeffrey S. Feld, appellant, argued the cause pro se.

Matthew J. Giacobbe argued the cause for respondents (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Matthew J. Giacobbe, of counsel and on the brief; Mary Anne Groh, on the brief).

PER CURIAM

Plaintiff Jeffrey S. Feld appeals from three Law Division orders in this action in lieu of prerogative writs challenging the adoption of a bond ordinance by the governing body of defendant Township of Millburn (Township) and alleging civil rights claims.  Plaintiff appeals:  (1) the May 17, 2023 case management order establishing a schedule for defendants' summary judgment motion; (2) the September 22, 2023 order granting defendants' summary judgment motion and dismissing the complaint with prejudice; and (3) the March 5, 2024 order denying plaintiff's motion for reconsideration of the September 22, 2023 order pursuant to Rule 4:49-2 and for relief from the September 22, 2023 order pursuant to Rule 4:50-1(b), (c), and (d).  We affirm.

I.

On June 1, 2021, Bond Ordinance 2579-21 (Bond Ordinance) was introduced and offered for a first reading at a meeting of the Millburn Township Committee (Committee).  The Bond Ordinance authorized the Township to incur indebtedness to finance capital improvements, including the construction of a

2

September 11 memorial, the reconstruction of Short Hills Avenue, and the removal of flex parking spaces on Millburn Avenue (the Flex Parking Project). The Bond Ordinance also appropriated the funds to finance those improvements.

Defendant Tara B. Prupis, then mayor of the Township, owned and operated a business on Millburn Avenue, in front of flex parking spaces. Under the Township's form of government, Prupis also served as a member of the Committee.

Before the close of the June 1, 2021 meeting, the Committee opened the meeting for public comment on any matter, including the Bond Ordinance. As reflected in the minutes of the meeting, plaintiff, a Township resident, addressed the Committee.

On June 2, 2021, plaintiff requested information and documents from the Township relating to the Bond Ordinance. On June 3, 2021, the Bond Ordinance was published. On June 14, 2021, the Township gave plaintiff a supporting supplemental debt statement relating to the Bond Ordinance. Plaintiff claimed the information provided by the Township was incomplete.

At its June 15, 2021 meeting, the Committee offered the Bond Ordinance for a second reading and opened the meeting for public comment. Comments

3

from members of the public were limited to three minutes each. Plaintiff questioned the basis for the three-minute limitation.

According to the minutes of the meeting, plaintiff made public comments with respect to the Bond Ordinance. The minutes summarized plaintiff's comments as follows:

> Jeffrey Feld . . . stated his concerns on Ordinance 2579-21. He offered several recommendations to the Committee for consideration. He voiced his concern [about] the removal of flex parking and asked if the Committee members who owned businesses in the area, where the flex parking was located, could vote on the ordinance in question.

Although he did not provide a transcript of the meeting, plaintiff alleged he questioned whether Prupis had a disqualifying conflict of interest relating to the Flex Parking Project and if there would be an appearance of impropriety if she voted on adoption of the Bond Ordinance. He also alleged he addressed the following issues: (1) why the cost of the Flex Parking Project was not specially assessed against Millburn Avenue property owners and businesses; (2) how the cost of the Project had been determined; (3) whether the local elected officials had a duty to respond to questions posed by members of the public on a second reading of an ordinance; (4) the source of funding for the September 11 memorial; (5) other funding options for the capital improvements authorized in

4 A-2494-23

the Bond Ordinance; and (6) whether the Committee received a written legal opinion regarding the validity of the Bond Ordinance.

The Committee thereafter unanimously adopted the Bond Ordinance, with Prupis casting a vote in favor of adoption. Notice of the adoption of the Bond Ordinance was published on June 24, 2021.

On July 13, 2021, plaintiff filed a complaint in lieu of prerogative writs challenging the adoption of the Bond Ordinance. In addition to the Township and Prupis, plaintiff named as defendants in their official and individual capacities: (1) Deputy Township Mayor Richard Wasserman; (2) Committee Member Dianne Thall-Eglow; (3) Committee Member Maggee Miggins; (4) Committee Member Sanjeev Vinayak; and (5) Township Business Administrator Alexander McDonald.

The complaint alleged five counts. In count one, plaintiff alleged the Bond Ordinance was invalid because: (1) its adoption was arbitrary, capricious, and ultra vires; (2) Prupis voted on the Bond Ordinance despite her disqualifying conflict of interest pursuant to the Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.1 to -22.25; and (3) the cost of the Flex Parking Project should have been financed as a special assessment on property owners and businesses on Millburn Avenue.

In count two, plaintiff alleged defendants "impair[ed] our robust marketplace of competing ideas" by failing to provide the public with reasonable notice and an opportunity to be heard before adopting the Bond Ordinance.

In count three, plaintiff alleged defendants engaged in a failure to supervise. The factual predicate and legal basis for count three is unclear.

In count four, plaintiff alleged defendants' conduct constituted a "state created danger." The factual predicate and legal basis for count four is unclear.

In count five, plaintiff alleged defendants violated his constitutional right to engage in an exchange of ideas with the Committee prior to adoption of the Bond Ordinance in violation of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2.

In addition, plaintiff, an attorney, alleged Prupis impugned his professional reputation, character, integrity, and competence by calling him a "misogynist" at the June 15, 2021 meeting. Finally, plaintiff alleged Prupis instituted a policy of not permitting the public to comment at Committee meetings until after the Committee had acted on its agenda items.[1]

---

[1] According to plaintiff, in January 2022, a new mayor changed the policy to permit public comment at Committee meetings prior to the Committee acting on its agenda items.

A-2494-23

Plaintiff sought an order invalidating the Bond Ordinance and declaring: (1) elected officials have a constitutional, statutory, and common law duty to answer all questions raised "in a second reading public hearing on all legislative discretionary ordinances"; (2) the three-minute limitation on public comments at "second reading public hearing[s]" invalid; (3) defendants failed to give plaintiff reasonable notice and an opportunity to be heard prior to adoption of the Bond Ordinance; (4) all members of the public have a constitutional, statutory, and common law right to "immediate access to a proposed ordinance and all its underlying supporting transactional documentation prior to the second reading public hearing"; (5) all members of the public have a constitutional, statutory, and common law right to be heard "on an agenda resolution action item prior to consideration and official action"; (6) defendants violated their constitutional, statutory, and common law fiduciary duties; and (7) awarding plaintiff damages and attorney's fees.

Because plaintiff's complaint was pending, the Township did not issue debt under the Bond Ordinance. The capital improvements identified in the Bond Ordinance were completed without the need for the financing authorized by that ordinance. At its March 7, 2023 meeting, the Committee adopted a resolution canceling the appropriations authorized by the Bond Ordinance.

7

On May 17, 2023, the court conducted a case management conference during which plaintiff sought to conduct discovery, including depositions of defendants. See R. 4:69-4 (providing the court in actions in lieu of prerogative writs, unlike other Track IV cases, may determine "[t]he scope and time to complete discovery, if any"). Defendants' counsel opposed the application, arguing plaintiff's challenge to the Bond Ordinance could be decided based on the minutes of the relevant Committee meetings. In the alternative, defense counsel requested a proffer from plaintiff of the factual issues he intended to address in discovery.

Plaintiff explained the nature of his claims to the court:

> This is an adoption of an ordinance where I'm challenging the validity of that ordinance. [A]nd that question is ["]what is the record[?"]. When you look at the record that they . . . made to approve it, they just said we're adopting this bond ordinance, they didn't answer the questions that I put on the record at (sic) that date. And we have videos of that.
>
> . . . .
>
> But this is a question about use of public monies and I just think . . . the best way to start doing this, so we have a clear record . . . that we at least get the discovery requests served on the parties, and if there's questions about protective orders . . . you handle that in the process of the motion practice.

In response, the court proposed the following:

8

> Or maybe [a] way of approaching the whole discovery issue – and when you say have a complete record, [plaintiff], maybe the complete record would be this:
>
> [Defendants' counsel] files her motion for summary judgment and if there is some motion or application for discovery, then a complete record would be the litigant seeking that [discovery] lays out what exactly is required, what they need, how that might impact on the summary judgment with respect to the issues that the summary judgment seeks to address, and then the [c]ourt would have a complete – or be able to make a decision on a complete record with . . . the ability to look at and see how specific discovery requests relate to a specific summary judgment motion . . . .
>
>      . . . .
>
> So, [plaintiff], why wouldn't the procedural . . . track . . . that would provide for the most complete and fullest record be to allow [defendants] to file [a] motion and . . . if there is a cross-motion or a separate motion for discovery, then the [c]ourt could look at the specific issues that are being raised in the summary judgment motion and have a way of saying whether or not the [c]ourt finds that there [are] issues of fact that might have to be addressed in discovery or otherwise?

In response to the court's inquiry, plaintiff replied, "Your Honor, I defer to you, how you want to handle the matter."

At the conclusion of the case management conference, the court entered a May 17, 2023 order establishing a schedule for submission and briefing of defendants' summary judgment motion.

Defendants subsequently moved for summary judgment. Although plaintiff opposed the motion as premature asserting a need for nonspecific discovery, he admitted all but one of the material facts in response to defendants' statement of undisputed material facts. He did not cross-move to compel discovery.

On September 22, 2023, the court issued an oral decision granting defendants' motion. With respect to plaintiff's challenge to the Bond Ordinance asserted in count one, the court concluded:

> [T]he arguments advanced by [plaintiff] at oral argument were . . . in . . . many respects, not matters that really were addressed in the complaint. There . . . was a lot of presentation by [plaintiff] . . . about . . . matters . . . that even occurred subsequent to the time the complaint was filed.
>
> Similarly, the . . . counts about the [B]ond [O]rdinance [are] not so much the issue because . . . the statement of material facts that were admitted show[] that there was the opportunity to speak with respect to the ordinance.
>
> . . . .
>
> It seemed there wasn't a basis to find that there was some impairment or . . . some issues with respect to the [B]ond [O]rdinance that would allow the [c]ourt to have the first count go forward, which was voiding the [B]ond [O]rdinance, both with respect to the conflict of interest and with respect to the opportunity to . . . be heard.

10

With respect to the remaining counts of the complaint, the court concluded:

> Count [two] was impairment of the robust marketplace [of] competing ideas, Count [three] was failure to supervise, Count [four] was state created danger, and five was civil rights violations.
>
> . . . .
>
> [T]he [c]ourt agrees . . . with respect to those other counts that the issues raised by [plaintiff] have more to do with the statutory framework for public meetings and . . . citizen participation, not with ones that . . . on this motion record could be seen, even under the summary judgment standard, as violative of [plaintiff's] rights.

A September 22, 2023 order memorialized the court's decision, granted defendants' motion for summary judgment, and dismissed the complaint with prejudice.

On October 3, 2023, plaintiff moved for reconsideration of the September 22, 2023 order pursuant to Rule 4:49-2 and for relief from the September 22, 2023 order pursuant to Rule 4:50-1(b), (c), and (d). He sought an order: (1) dismissing count one of the complaint on mootness grounds; (2) granting summary judgment to defendant on counts two to five to the extent those counts arise from or relate to the adoption of the Bond Ordinance, statements made by defendants about plaintiff on June 15, 2021, and the denial of plaintiff's right to

be heard on all non-ordinance agenda prior to consideration of those items by the Committee; (3) stating "the trial court did not consider or rule on the procedural due process and Whispering Woods validity of the July 30, 2021 [F]air [S]hare [H]ousing settlement under State law."[2]

On March 5, 2024, the court issued an oral decision denying plaintiff's motion. The court concluded count one was not moot because the Bond Ordinance had not been rescinded by the Committee, even if the Township had not incurred debt under the ordinance. That conclusion negated plaintiff's request for relief in favor of defendants for most of his claims. The court also concluded plaintiff did not establish grounds for relief under Rule 4:50-1(b), (c), or (d).

A March 5, 2024 order memorialized the court's decision denying plaintiff's motion. This appeal followed.

Plaintiff raises the following arguments.

---

[2] This aspect of plaintiff's motion refers to the holding in Whispering Woods at Bamm Hollow, Inc. v. Twp. of Middletown Planning Bd., 220 N.J. Super. 161, 173 (Law Div. 1987), which confirmed the authority of a local land use board to settle disputes with an applicant that challenged, in an action in lieu of prerogative writs, the board's denial of a development application. The Fair Share Housing settlement to which plaintiff refers appears to be a settlement involving Township and a developer. That settlement is not referenced in the complaint and is not related to the Bond Ordinance or plaintiff's claims against defendants.

Point I.

The Trial Court Improperly Placed Its Thumbs Upon the Scales of Justice.

Point II.

Defendants Obfuscated the Facts and the Law.

Point III.

Defendant Prupis Had a Disqualifying Flex Parking Removal Conflict of Interest and Appearance of Impropriety.

Point IV.

The Trial Court Committed a Series of Patently "Manifestly Unjust" Reversible Errors and Omissions Supporting Reconsideration, Vacation, Amendment and Alteration of the September 22, 2023 Pre-Discovery Dispositive Summary Judgment Dismissal in Favor of All Defendants.

Point V.

The Doctrine of Mootness Applied Here.

Point VI.

The Doctrine of Equitable Estoppel and Turning Square Corners Supported Reconsideration, Vacation, Amendment and Alteration of the September 22, 2023 Pre-Discovery Dispositive Summary Judgment Dismissal in Favor of All Defendants.

Point VII.

13

The Trial Court Failed to Exercise its Powers and Jurisdiction Under the Prerogative Writs Clause and <u>Rule</u> 4:69-4.

## II.

A.    <u>The May 17, 2023 Case Management Order.</u>

We review a decision concerning the management of discovery for an abuse of discretion. <u>Leitner v. Toms River Reg'l Schs.</u>, 392 N.J. Super. 80, 87 (App. Div. 2007). "That is, '[w]e generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law.'" <u>Pomerantz Paper Corp. v. New Cmty. Corp.</u>, 207 N.J. 344, 371 (2011) (quoting <u>Rivers v. LSC P'ship</u>, 378 N.J. Super. 68, 80 (App. Div. 2005) (alteration in original)).

We have reviewed the record and conclude the trial court did not mistakenly exercise its discretion when it established a schedule for submission of defendants' motion for summary judgment without a period of discovery. We discern no abuse of discretion in the trial court's decision to deny plaintiff's request for discovery. Plaintiff filed a complaint in lieu of prerogative writs, and such actions are generally limited to the record created before a municipal board or council. <u>See</u> <u>Willoughby v. Plan. Bd. of Deptford</u>, 306 N.J. Super. 266, 273-74 (App. Div. 1997); <u>see also</u> <u>R.</u> 4:69-4.

Here, the motion court, with plaintiff's consent, permitted him to cross-move in response to defendants' summary judgment motion to compel any discovery he deemed necessary. Plaintiff, however, did not do so. In fact, in response to defendants' statement of material facts not in dispute, plaintiff contested only one: that "Defendant Prupis never used the word misogynist" when describing plaintiff at the June 15, 2021 Committee meeting. Plaintiff offered no evidence supporting his claim that Prupis departed from the written statement she read at the meeting, which did not contain the word misogynist, when discussing plaintiff. In addition, whether Prupis described plaintiff as a misogynist was not material to the claims alleged in the complaint. Plaintiff did not allege a claim for defamation against Prupis. The exact content of Prupis's statement about plaintiff, therefore, was not relevant.

B.    The September 22, 2023 Order
        Granting Summary Judgment.

We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch

15

v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

Municipal ordinances are presumed valid, and the presumption of validity may not be overcome unless the ordinance is "clearly arbitrary, capricious or unreasonable." Berardo v. City of Jersey City, 476 N.J. Super. 341, 355 (App.

A-2494-23

Div. 2023) (quoting Riggs v. Twp. of Long Beach, 109 N.J. 601, 610-11 (1988)). The party challenging the ordinance "bears the burden of overcoming the presumption." Riggs, 109 N.J. at 611 (citing Ward v. Montgomery Twp., 28 N.J. 529, 539 (1959)). A "[r]eviewing court[] should not be concerned over the wisdom of an ordinance" and "[i]f debatable, the ordinance should be upheld." Blackridge Realty, Inc. v. City of Long Branch, 481 N.J. Super. 183, 194 (App. Div. 2025) (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 253 (2015) (internal quotations omitted)).

Thus, "[t]he proper scope of judicial review is not to suggest a decision that may be better than the one made by the [Township], but to determine whether the [Township] could reasonably have reached its decision on the record." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005). We do not substitute our judgment for that of the municipality unless there is a clear abuse of discretion. Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013).

We agree with the motion court's conclusion defendants did not deny plaintiff an opportunity to address the Bond Ordinance at the June 1, 2021 and June 15, 2021 Committee meetings. The record unequivocally established plaintiff spoke at both meetings. He cites no legal precedent, and we have found none, for the proposition that members of the Committee were required to permit

him to speak prior to their acting on any item on its agenda or to engage in a colloquy with plaintiff.

Nor did plaintiff establish Prupis had a conflict of interest or appearance of impropriety disqualifying her from voting on the Bond Ordinance. The LGEL creates a statutory code of ethics that governs when a disqualifying conflict of interest arises for a local government official. See Piscitelli v. City of Garfield Zoning Bd. of Adjustment, 237 N.J. 333, 349-50 (2019); Grabowsky v. Twp. of Montclair, 221 N.J. 536, 552-53 (2015). "The overall objective 'of conflict of interest laws is to ensure that public officials provide disinterested service to their communities' and to 'promote confidence in the integrity of governmental operations.'" Piscitelli, 237 N.J. at 349 (quoting Thompson v. City of Atl. City, 190 N.J. 359, 364 (2007)).

The statute provides:

> No local government officer or employee shall act in his [or her] official capacity in any matter where he [or she], a member of his [or her] immediate family, or a business organization in which he [or she] has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his [or her] objectivity or independence of judgment.
>
> [N.J.S.A. 40A:9-22.5(d).]

18

See also N.J.S.A. 40A:9-22.2 (setting forth the Legislature's declarations concerning the duties of local government officials).

"We must construe N.J.S.A. 40A:9-22.5(d) to further the Legislature's expressed intent that '[w]henever the public perceives a conflict between the private interests and the public duties of a government officer,' 'the public's confidence in the integrity' of that office is 'imperiled.'" Piscitelli, 237 N.J. at 351 (alteration in original) (quoting N.J.S.A. 40A:9-22.2(b) to (c)). Disqualification is required when a public official has (1) a direct pecuniary interest; (2) an indirect pecuniary interest; or (3) a direct personal interest sufficient to justify disqualification. Grabowsky, 221 N.J. at 553 (quoting Wyzykowski v. Rizas, 132 N.J. 509, 525 (1993)).

"'[A] court's determination "whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case."'" Piscitelli, 237 N.J. at 353 (quoting Grabowsky, 221 N.J. at 554). "A conflicting interest arises when the public official has an interest not shared in common with the other members of the public." Wyzykowski, 132 N.J. at 524. Accordingly, "[t]he ethics rules must be applied with caution, as '[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an

official.'" Grabowsky, 221 N.J. at 554 (second alteration in original) (quoting Wyzykowski, 132 N.J. at 523). "It is essential that municipal offices be filled by individuals who are thoroughly familiar with local communities and concerns." Ibid. Consequently, conflict-of-interest rules "do not apply to 'remote' or 'speculative' conflicts because local governments cannot operate effectively if recusals occur based on ascribing to an official a conjured or imagined disqualifying interest." Piscitelli, 237 N.J. at 353.

In support of his argument, plaintiff relies on Prupis's ownership and operation of a business on Millburn Avenue adjacent to the flex parking spaces. He produced no evidence that removal of those spaces would directly benefit Prupis's business or, any such benefit, if it existed, would not be shared with other members of the community, including the other businesses on Millburn Avenue. The record is void of evidence of how removal of parking spaces would constitute a direct, individual benefit to Prupis or her business disqualifying her from voting on adoption of the Bond Ordinance.[3]

---

[3] Plaintiff alleges Prupis received a campaign contribution from the owner of the building in which her business is located after adoption of the Bond Ordinance. The contribution is not alleged in the complaint and plaintiff offers nothing but his speculation to connect the alleged contribution to Prupis's participation in the adoption of the Bond Ordinance.

With respect to plaintiff's NJCRA claim, the statute provides, in relevant part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with . . . by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

The NJCRA, which was modeled on 42 U.S.C. § 1983, created a private cause of action for violations of civil rights secured by the federal and New Jersey Constitutions. Tumpson v. Farina, 218 N.J. 450, 474 (2014); Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011). Thus, in interpreting the NJCRA, New Jersey courts often look to federal cases analyzing § 1983. See Farina, 218 N.J. at 474 (cases applying "[§] 1983 may provide guidance in construing our Civil Rights Act").

As noted above, we agree with the motion court's conclusion plaintiff failed to establish defendants violated his right to speak at the Committee's meetings and did not establish a constitutional or statutory right to engage in a

21

colloquy with Committee members. He, therefore, did not establish a violation of the NJCRA.

C. The March 5, 2024 Order.

Rule 4:49-2 provides:

> Except as otherwise provided by R. 1:13-1 (clerical errors), a motion for rehearing or reconsideration seeking to alter or amend a judgment or final order shall . . . state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or final order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87 (2010)); see also Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). A party may move for reconsideration of a court's decision pursuant to Rule 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application . . . ." Id. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). The

moving party must "initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401.

A motion for reconsideration is not an opportunity to "expand the record and reargue a motion. [It] is designed to seek review of an order based on the evidence before the court on the initial motion, . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

Rule 4:50-1 sets forth the grounds on which a party may be relieved from a final judgment. The Rule provides, in relevant part:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: . . . (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; [and] (d) the judgment or order is void . . . .
>
> [R. 4:50-1.]

An application to set aside an order pursuant to Rule 4:50 is addressed to the motion judge's sound discretion, which should be guided by equitable

A-2494-23

principles.  Hous. Auth. of Town of Morristown v. Little, 135 N.J. 274, 283 (1994).  A trial court's determination under Rule 4:50-1 is entitled to substantial deference and will not be reversed in the absence of a clear abuse of discretion. US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012).  To warrant reversal of the court's order, the movant must show that the decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."  Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007) (internal quotations omitted)).

To obtain relief under subsection (b), the newly discovered evidence must be:  (1) material to the issue and not merely cumulative and impeaching; (2) discovered after entry of the order that is the subject of the motion; and (3) of such a nature as to likely change the result.  DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 264 (2009).  Under subsection (c), "[f]raud is not presumed; it must be proven through clear and convincing evidence."  Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989) (citing Albright v. Burns, 206 N.J. Super. 625, 636 (App. Div. 1986)).  Subsection (d) requires the movant to establish the order that is the subject of the motion is void.  Jameson v. Great Atl., 363 N.J. Super. 419, 425 (App. Div. 2003).

Having reviewed the record, we find no mistaken exercise of the court's discretion in its denial of plaintiff's motion for reconsideration of, or relief from, the September 22, 2023 order. Plaintiff's motion repeated many of the arguments rejected by the court on defendants' summary judgment motion and focused on developments that took place after the filing of the complaint that were tangentially related to plaintiff's claims or irrelevant.

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we conclude they either concern issues outside the pleadings, were not raised below, or lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

25

A-2494-23